## Collins v. Parrent, Clerk, et al.

(Decided March 26, 1920.)

### Appeal from Franklin Circuit Court.

1. Taxation—Municipal Corporations—Appeal and Error.—A tax-payer in a third class city whose property has been listed for taxation at an excessive valuation may appeal to the board of supervisors for relief; and if it fail to grant relief the taxpayer may appeal to the common council of such city, but there is no appeal from the finding of the common council unless it appear that the excessive valuation of which complaint is made, is the result of fraud or corruption on the part of one or more of said taxing agencies, in which event a court of equity will grant relief.

2. Taxation—Injunctive Relief—Equity.—Where the petition seeking injunctive relief merely avers that the taxing authorities have listed the property of plaintiff at an excessive valuation without charging fraud, a court of chancery will not take jurisdiction.

3. Taxation—Assessments—Pleading.—An averment that the assessments are illegal, unfair, unjust and unreasonable, are but conclusions of the pleader.

DULIN MOSS for appellant.

FRANK M. DAILEY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Collins owned six lots and houses in the city of Frankfort subject to taxation for municipal purposes. The tax assessor listed two of these properties for $1,000.00, each; three of them at $600.00, each, and one of them at $700.00, as of January 10, 1917. To this Collins objected and inserted an advertisement in a local newspaper saying:

"NOTICE.

"I will offer for sale on January 10th, 1917, on premises 6 cottages on Holmes street and Grace avenue, in the city of Frankfort, Ky., for cash in hand. Anyone wishing to investigate said property before day of sale can do so by calling on Mr. Franklin Morris, East Holmes street.

"Advertisement.            "J. S. COLLINS."

In pursuance to the advertisement Collins, through an auctioneer, offered to sell the six properties for cash at public outcry on the premises, but the highest bids received were much less than the amounts at which the assessor had listed the property for taxation. Thereupon,

Collins instituted this action against the city clerk, Mervin Parrent, the city tax collector and other city officers, praying an injunction restraining them from certifying said assessments or delivering the tax books to the collector. To the petition the defendants interposed a general demurrer which was sustained, and the plaintiff Collins declining to further plead, the petition was dismissed, and he prosecutes this appeal.

In addition to the facts set forth above, the plaintiff, Collins, averred in his petition that he appeared before the common council of the city of Frankfort, at its regularly authorized meeting, held for the purpose of hearing appeals of taxpayers to protest against the assessments made by the city assessor, and the action taken by the regularly appointed and qualified board of supervisors of said city, and did protest against said assessments as illegal, unfair, unreasonable and unjust, and much greater than the fair cash value of the property; that said assessments were illegal, unfair, unjust and unreasonable and deprived him of his property without due process of law; that the defendants were then threatening to enforce said assessments and to issue thereon certificates or tax receipts to the defendant tax collector, to the great and irreparable injury of the plaintiff. It was nowhere alleged that the assessor, or members of the board of supervisors of the city, or of the common council, acted in bad faith or fraudulently in the making of the assessments of the property of Collins for taxation.

Frankfort is a city of the third class, and as such is governed by subdivision 5, entitled "Revenue and Taxation," beginning with section 3374, Kentucky Statutes. By section 3379, it is provided:

"All property shall be assessed and valued as of the tenth day of January of each year, and the assessor shall begin his work on that day, or as soon thereafter as practicable, and have the same completed by the tenth day of March following, and return the same to the common council."

Section 3382 provides

"During the month of March of each year the mayor shall, subject to the approval of the council, appoint three intelligent housekeepers residing in different wards of the city, who shall constitute the board of tax supervisors for said city."

Section 3383 reads:

"The said supervisors shall convene in the council hall on the first Monday in April in each year, and proceed to the discharge of their duties. The assessor shall meet with them and act as their clerk. The supervisors shall supervise all assessments, and see that all property is assessed at its fair cash value, taking into consideration the width, depth and location of lots, and the cost and condition of improvements and personal property."

By section 3385, it is provided:

"The supervisors having finished their work, shall return the tax book to the city clerk, who shall submit same to the common council, and the council shall have power to make such changes in the assessment or valuation of any list as may be just and equitable; and any person aggrieved by any action of the assessor or supervisor may appeal to the common council."

Under these statutes it is the duty of the city assessor to list the property of taxpayers in the city at its fair cash value as of January 10th of each year; and when he has finished the listing of property, it is his duty to turn over his books to the common council, there to await the convening of the board of supervisors, which is appointed by the mayor. When the board of supervisors meet the books of the asssessor are examined and each assessment supervised by the board in accordance with the law governing county supervisors of taxes. After the board of supervisors have finished their work the tax book is returned to the city clerk and by him submitted to the common council of the city, which body has power to make such changes in the estimation or valuation of any list as may be just and equitable, and to hear the complaint or protest of any person aggrieved by the action of the assessor, or board of supervisors on appeal to the common council. The statute does not provide any further proceeding for a dissatisfied taxpayer, after he has sought and obtained a hearing before the common council of the city. He may list his property with the assessor at any price which he may think right and proper, but the assessor may fix a different valuation if he regards that fixed by the owner as either too high or too low. If the taxpayer is dissatisfied with the valuation fixed by the assessor he may appear before the board of supervisors and that board has power to change the as-

sessment to conform to the facts and the right of the matter, and if the board of supervisors should fail to afford him the relief which he conceives is right, the taxpayer may appeal to the common council of the city and this is the last step in the proceeding; and if the common council deny the taxpayer the relief which he seeks he is without remedy, unless the assessor, board of supervisors, or members of the common council, have acted fraudulently or corruptly in the assessment of the property of the complainant, in which event the taxpayer may obtain relief by appeal to the courts.

Appellant Collins does not rely upon the bad faith or corrupt or fraudulent conduct of either of the assessing agencies aforementioned, but relies upon the fact alone that the assessment is excessive and, therefore, illegal, unfair, unreasonable and unjust. This he attempts to manifest by an averment of facts showing a good faith offer to sell all the property in question at public outcry for cash on the day provided by statutes for the listing of property for taxation in cities of the third class; and the further averment that the highest prices offered for such property were much less than the price at which the property had been listed by the taxing agencies of the city for the purposes of taxation for the year in question. Counsel do not cite any authority in support of this unusual proceeding and contention. We know of no rule by which a taxpayer can fix the valuation of his property for the purposes of taxation by proposing an auction sale of his property on the day the property should be valued and assessed for municipal taxation.

The allegations of the petition did not state a cause of action nor entitle the plaintiff to the relief prayed. The averment that "the assessments are illegal, unfair, unjust and unreasonable," are but conclusions of the pleader. If the petition had contained averments showing that the assessor, board of supervisors, and common council, or either of them, had acted corruptly and fraudulently in the listing of the property of the plaintiff, the demurrer would have been overruled, but a mere allegation in substance that the assessment was excessive, or that the officers were mistaken, was not sufficient to entitle appellant to the injunctive relief sought. For the reasons indicated the judgment is affirmed.

Judgment affirmed.

Whole court sitting.